UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,                          Case No. 1:23-cr-095

v.                                          Hon. Robert J. Jonker
                                                United States District Judge

RASHAD MALEEK TRICE,

       Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS INDICTMENT
FOR LACK OF JURISDICTION**

Pursuant to Fed. R. Crim. Pro. 12(b)(1) and (2), Rashad Maleek Trice, through his counsel, moves this Court to dismiss the Indictment in this case because the government cannot establish federal jurisdiction over the conduct alleged in the Indictment. Mr. Trice brings an as-applied challenge to 18 U.S.C. § 1201. The statute, applied to cases based purely on intrastate conduct, constitutes an overreach of Congressional authority under the Commerce Clause. (U.S. Const. Article I, Section 8). The crime alleged here—a violent, intrastate crime that involved no interstate activity—is one that is traditionally within the province of the states' police power. Because the statute, as applied to Mr. Trice, does not fall under any of the categories described in *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995), the federal charges must be dismissed.

**Background Information**

The government charged Rashad Maleek Trice with kidnapping a minor under 18

U.S.C. §§ 1201(a)(1) and (g)(1); and kidnapping resulting in death under 18 U.S.C. § 1201(a)(1). (ECF No. 19, Indictment, PageID.119-120).[1]  It alleges that on July 3, 2023, Mr. Trice kidnapped a two-year-old child, the daughter of his ex-girlfriend, in Lansing, Michigan, following an altercation between the two adults. An Amber Alert was issued to search for the missing child and a search ensued. Mr. Trice was located in St. Clair Shores, Michigan, and arrested.  Sometime later, the child's body was found in an alley in the Detroit area and the cause of death was determined to be strangulation.  At no time did Mr. Trice or the minor victim cross the state border; the entirety of the alleged conduct occurred within the State of Michigan.  Nevertheless, the government argues that the alleged offense is a federal crime because in committing and in furtherance of the offense: 1) Mr. Trice traveled on interstate highways, 2) used a cellular phone and communication network, and 3) drove a foreign-made vehicle.  Mr. Trice contends that the Indictment must be dismissed because the statute, as applied to him, is unconstitutional.

## ARGUMENT

The federal government charged Mr. Trice with kidnapping a minor and kidnapping resulting in death, 18 U.S.C. § 1201. That statute contains a jurisdictional subpart which

---

[1] Mr. Trice is also charged in state court with the following twenty counts: homicide-felony murder; homicide-murder first degree-premeditated; kidnapping-child enticement; home invasion 1st degree; kidnapping; two counts of criminal sexual conduct 1st degree; assault with intent to murder; motor vehicle unlawful driving away of auto; stalking; domestic violence and/or knowingly assaulting a pregnant individual 2nd; stolen property receive and conceal $1000 - $20,000; stolen property receiving and concealing motor vehicle; police officer fleeing 2nd degree; peace officer disarming firearm; assault with dangerous weapon; police officer assault/resist/obstruct causing injury; and three counts of police officer assaulting/resisting/obstructing.

provides that kidnapping occurs when a person is:

> willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

18 U.S.C. § 1201. The government has asserted that federal jurisdiction exists on three bases: (1) Mr. Trice used a cellphone and a cellular communication network; (2) Mr. Trice travelled on interstate highways; and (3) the car driven by Mr. Trice was made in another country (Canada). (ECF No. 19, PageID.119-120). It is undisputed that the victim in this case was never transported across state line, Mr. Trice did not cross the state line, and no phone calls were made outside the state. All of the alleged offense conduct occurred within the geographic boundaries of the State of Michigan. Under such circumstances, the federal kidnapping statute is unconstitutional as applied to this case.

    **I.**    **Congress's power to regulate criminal conduct is limited.**

It is well-established that Congress's power to punish criminal activity is a limited one. *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995); *United States v. Morrison*, 529 U.S. 598, 607 (2000). "Congress cannot punish felonies generally." *Torres v. Lynch*, 578 U.S. 452, 457 (2016) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 428 (1821)). Congress may only enact "those criminal laws that are connected to one of its constitutionally enumerated powers, such as the authority to regulate interstate commerce." *Id.* The Commerce Clause gives Congress the "Power … to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

Congress's authority to regulate interstate commerce is also limited. While the interpretation and application of that power has expanded dramatically over time, "even under our modern, expansive interpretation of the Commerce Clause, Congress' regulatory authority is not without effective bounds." *United States v. Morrison*, 529 U.S. 598, 608 (2000). As the Supreme Court held in *United States v. Lopez*:

> the scope of the interstate commerce power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local….

*Lopez*, 514 U.S. 549, 557. These limitations are an inherent part of a system of enumerated powers. As James Madison wrote, "the powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite." *Lopez*, 514 U.S. at 552 (citing The Federalist No. 45, pp. 292-93 (C. Rossiter ed. 1961)). Those limitations are necessary "to ensure the protection of our fundamental liberties." *Lopez*, 514 U.S. at 552 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991)). "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Lopez*, 514 U.S. at 552.

In the context of local, intrastate criminal conduct of the kind alleged in this case, Congress must take particular care not to encroach upon a state's police power to regulate its own affairs. As *Morrison* held, Congress may not "regulate noneconomic, violent

4

criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Morrison*, 529 U.S. at 617. Indeed, the Supreme Court has stated that there may be "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Id.* at 618.

The Supreme Court has outlined three categories of activity that Congress can regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. *Lopez*, 514 U.S. at 558. Second, Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id.* Third, Congress may regulate activities that "substantially affect interstate commerce." *Id.* at 558-59. In any category, Congress must avoid stacking "inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567.

Because Congress enacted 18 U.S.C. § 1201 pursuant to its power to regulate interstate commerce, the question presented here is whether the federal kidnapping statute falls under any of the three *Lopez* categories. The Sixth Circuit has recently addressed that question in *United States v. Windham*, 53 F.4th 1006 (6th Cir. 2022), where it held that the federal kidnapping statute is a valid exercise of Congress' power under the Commerce Clause. In another recent case, *United States v. Allen*, 86 F.4th 295 (6th Cir. 2023), the Sixth Circuit upheld a murder-for-hire statute against a similar constitutional challenge.

While these cases are binding on this Court, Mr. Trice argues that they are wrongly decided and preserves the issue for further review.

> II. **The federal kidnapping statute does not regulate the instrumentality or channels of interstate commerce, so it does not fall under *Lopez's* first or second category.**

The federal kidnapping statute does not fall under the first or second *Lopez* categories because the statute does not aim to regulate the channels or instrumentalities of interstate commerce. *Morrison* asserted unequivocally that "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Morrison*, 529 U.S. at 618. Therefore, a statute cannot withstand scrutiny unless it is, at the least, "directed at" those instrumentalities. However, the text and legislative history make it clear that the statute's entire concern is with kidnapping, not commerce in any form. The 2006 amendment to the statute offered no explanation of the addition of the "instrumentalities" of interstate commerce into the text. Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248, 120 Stat. 616 (codified at 18 U.S.C. § 1201(a)(1)). In *United States v. Windham*, *supra,* the Court found that, unlike other statutes with similar justifications under the commerce power, "the kidnapping statute is meant to protect people, not an instrumentality of interstate commerce such as cars." 53 F.4th 1006, 1012 (6th Cir. 2022).

A comparison of the federal kidnapping statute with similar federal statutes directed at the instrumentalities of interstate commerce shows the distance between the federal kidnapping statute and the stereotypical statute that regulates activities under *Lopez*'s

6

second category. For instance, 18 U.S.C. § 1951 (the Hobbs Act), which regulates "[i]nterference with commerce by threats or violence," applies to "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951. Therefore, this statute is a clear example of a statute "directed at" interstate commerce—it regulates violent activity, undoubtedly, but its clear concern is safeguarding the instrumentalities of commerce. That is not so with the federal kidnapping statute: a statute that regulates violence as a means of protecting the instrumentalities of interstate commerce. The statute is the inverse of a statute that merely mentions the instrumentalities of interstate commerce as a means to securing federal jurisdiction over intrastate violence.

### a) *United States v. Windham*, 53 F.4th 1006 (6th Cir. 2022)

The Sixth Circuit recently assessed as a matter of first impression whether the "intrastate use of a cell phone and automobile satisfies § 1201(a)(1)'s interstate commerce requirements." *Windham*, 53 F.4th at 1011. In *Windham*, the defendant pled guilty to federal kidnapping, but on appeal argued that there was an insufficient factual basis for his plea. The Court framed the issue as follows: "the issue is whether, where the record does not establish that [defendant] used the cell phone or automobile to conduct interstate activity, the cell phone and automobile constitute instrumentalities of interstate commerce under § 1201(a)(1)." *Id*.

The Court acknowledged that only the Seventh Circuit had directly answered that question and did so by looking to the federal murder-for-hire statute. *Id.* at 1012 (citing *United States v. Protho*, 41 F.4th 812 (7th Cir.), cert. denied, 143 S. Ct. 465 (2022)). In

7

*Windham*, the Sixth Circuit took the Seventh Circuit's cue and relied on *United States v. Weathers*, 169 F.3d 336 (6th Cir. 1999), which involved a similar challenge to the federal murder-for-hire statute.  *Weathers* upheld the federal murder-for-hire statute on the basis that statutes referring to instrumentalities *of* interstate commerce apply to intrastate activities. *Windham*, 43 F.4th at 1012-13 (citing *Weathers* 169 F.3d at 342).  The *Windham* Court thus held that because "the federal kidnapping statute refers to instrumentalities '*of* interstate or foreign commerce.' …. [t]he issue is therefore whether cars and cell phones are instrumentalities of interstate commerce, not whether they were used interstate." *Windham*, 53 F.4th at 1013 (emphasis in the original).  Because the Sixth Circuit has "held repeatedly and unambiguously that cars and phones are instrumentalities of interstate commerce," *Windham* determined that the federal kidnapping statute was a valid exercise of Congressional authority to regulate interstate commerce activity in the second *Lopez* category. *Id.*  While Mr. Trice acknowledges that *Windham* is controlling here, Mr. Trice asserts that *Windham* is wrongly decided.

There are several basic issues with *Windham*.  First, *Windham* was mistaken to rely heavily on *Protho* to guide its decisional process.  In *Protho*, the Seventh Circuit handled a case where there was "no doubt that the Ford Explorer at issue was used in interstate commerce." *Protho*, 41 F.4th at 828.  The defendant drove the Explorer across the Indiana-Illinois border as part of the offense. Thus, in *Protho*, unlike here, the defendant traveled in interstate commerce. Consequently, the Court's reliance on *Protho* is misplaced.

The *Windham* Court made a more fundamental error, however, in treating the commerce-power question as a categorical one that was squarely decided by *Weathers* and

8

the federal murder-for-hire statute. In deciding whether an object is an instrumentality of interstate commerce, the Court only looked at the *nature* of the object, stating it is "the nature of the regulated object's class … rather than the particular use of one member of that class … that matters." *Windham*, 53 F.4th at 1012 (quoting *Protho*, 41 F.4th at 828-29). But it is more than just the mere "nature" of the object's class that must be considered when assessing a challenge to a statute under *Lopez*. Instead, when determining whether a statute falls under *Lopez*'s second category, what controls is the nature of the object's class *in the context of the statute*. That difference is essential to maintaining some semblance of distinction and balance between federal and state jurisdiction over intrastate crime. By the logic of the *Windham* approach, the government can enact *any* regulation so long as it involves a cell phone or a car (which are rather ubiquitous and permeate almost any activity in modern society) even if there is no effect on interstate commerce. Thus, if a car does not turn its blinker on before turning on a four-way stop, the federal government can criminally prosecute that activity because it involved a car, an incontrovertible instrumentality of interstate commerce. By *Windham*'s logic, it is difficult to imagine what intrastate criminal activity *does not* fall within Congress's commerce power. *See United States v. Glover*, No. 3:22-CR-00057-HZ, 2023 WL 3304311, at *11 (D. Or. May 7, 2023) (involving a similar challenge to the federal kidnapping statute).

Another district court disagreed with *Windham* and held that the use of a common vehicle alone could not suffice to satisfy the interstate nexus required for Congress to exercise its commerce authority. *United States v. Chavarria*, No. 22-CR-1724-KG, 2023 WL 3815203 (D.N.M. June 5, 2023). As the court wrote, "Congress has not indicated an

9

intent to assert Commerce Clause authority and bring under federal jurisdiction non-economic criminal kidnapping entirely occurring intrastate simply because of the use of a common vehicle." *Chavarria*, 2023 WL 3815203, at *8. The district court shared the same federalism concerns:

> Based on the reasoning of the Supreme Court in *Lopez*, as well as in *Morrison* applying *Lopez*, this Court finds persuasive the impropriety of extending federal jurisdiction under the Commerce Clause because of a use of a vehicle without explicit congressional intent to regulate non-economic criminal behavior and with no jurisdictional or case-by-case inquiry.

*Id.* at *6 (citations omitted).

### b) *United States v. Allen*, 86 F.4th 295 (6th Cir. 2023)

More recently, in November of 2023, the Sixth Circuit addressed a similar question in the context of murder-for-hire statutes and held that the intrastate use of cellphones in connection with murder-for-hire provides federal jurisdiction. *United States v. Allen*, 86 F.4th 295 (6th Cir. 2023). However, two panel members expressed serious doubts about such a ruling.

In *Allen*, two defendants were charged with the crime of using a facility of interstate commerce (their cellphones) in a murder-for-hire scheme, in violation of 18 U.S.C. § 1958(a). *Id.* at 297. It was undisputed that the entire conduct occurred within the borders of the State of Michigan; no accomplice traveled outside of Michigan and all the phone calls were made inside the state although some phone calls required the telephone company to use out-of-state switches. *Id.* The defendants moved to dismiss their charges arguing that the Commerce Clause did not give Congress the power to regulate their crime because it occurred entirely within the State of Michigan. *Id.* at 298. In a per curiam opinion, the

Sixth Circuit, in a panel consisting of Judges Stranch, Murphy, and Bush, rejected the argument as contrary to binding precedent. However, Judge Murphy, joined by Judge Bush, wrote a separate opinion expressing serious doubts about the validity of such rulings and prior precedent.

The Court held that the conduct at issue fell under the first and second *Lopez* categories of activity that Congress may regulate under the Commerce Clause. *Id*. at 300-302. Citing *Lopez* and *Weathers*, the Court held that a defendant uses the "channels of interstate commerce" (the first *Lopez* category) "when the defendant makes *intrastate* phone calls that require the use of *interstate* switches for their connection." *Allen*, 86 F4th at 301 (citing *Lopez*, 514 U.S. at 558, 115 S. Ct. 1624; *Weathers*, 169 F.3d at 342). Further, citing *Windham*, the Court held that a cellphone is an "instrumentality" of interstate commerce, so Congress may regulate even their "intrastate" use. *Allen*, 86 F4th at 301-302.

Judge Murphy issued a separate opinion, in which Judge Bush joined, concurring in the opinion as bound by prior precedent, but expressing serious doubts about the holding:

> While our binding precedent requires us to agree with the government, I am skeptical of both grounds. I write to explain why I remain particularly unconvinced by our broad rule allowing Congress to regulate any activity using a phone. If correct, this holding would all but undo the Supreme Court's recent limits on its substantial-effects test.

*Allen*, 86 F.4th at 308 (Murphy J. concurring). Judge Murphy pointed out that at the time of our nation's founding, the key word "commerce" was understood to mean trade and transportation, and consequently it was understood that the Commerce Clause originally allowed Congress to regulate traded goods and their transportation and shipment. *Allen*, 86

11

F4th at 308-09. Today, however, the Commerce Clause is significantly broadened, and it "give[s] Congress authority over many things that nobody would describe as interstate trade or the shipment of the traded goods." *Id*. at 309.

Judge Murphy highlighted three concerns regarding a broad interpretation of the Commerce Clause espoused by *Allen* and cases *Allen* relied on that give Congress the power to punish defendants for murder because they made a phone call in Michigan. *Id*. at 310. "[T]his broad rule appears contrary to the Commerce Clause's original meaning, the Supreme Court's caselaw does not seem to justify the rule, and our precedent adopted it with little reasoning." *Id*. at 310.

First, in addressing the Commerce Clause's original meaning, Judge Murphy reasoned that since Congress historically lacked the power to regulate all activities involving letters or carriages, it likewise lacked the power to regulate all activities involving phones and cars, the modern-day counterpart of letters and carriages. *Id*. at 310-311.

Second, although the Supreme Court over time has expanded the reach of the Commerce Clause, no Supreme Court case went as far as the circuit court. *Id*. at 311. Supreme Court cases "do not justify the rule that Congress may automatically regulate all activities involving phones." *Id*. at 312. Instead, these decisions indicate that "Congress may regulate local conduct when 'necessary or appropriate' to govern an interstate transportation system." *Id*. (citing *Houston, E. & W. Tex. Ry. Co. v. United States (Shreveport Rate Cases)*, 234 U.S. 342, 350–55, 34 S. Ct. 833, 58 L.Ed. 1341 (1914); see U.S. Const., art. I, § 8, cl. 18). Applied here, that means that "Congress could protect an

interstate-communications network by preventing local activities (whether phone calls or other behavior) that harm the network." *Allen*, 86 F.4th at 312 (citing *Pensacola Tel. Co. v. W. Union Tel. Co.*, 96 U.S. 1, 9-11 (1877)). However, the government did not argue that the defendant's offense or the calls he made harmed an interstate network. *Allen*, 86 F.4th at 312 (citing *United States v. Reed*, 489 F.2d 917, 920 (6th Cir. 1974)). "It instead argued that the mere making of a local call allowed Congress to ban a local murder—without any nexus between that local ban and a broader scheme regulating interstate commerce." *Allen*, 86 F.4th at 312. Given the ubiquity of cars and cellphones in modern life, such a "broad reading would eviscerate the Supreme Court's more recent limits on its substantial-effects test." *Id*. at 312.

Third, Judge Murphy pointed out that the Sixth Circuit's own precedent does not support such a broad rule. *Id*. at 312. The Sixth Circuit has often repeated that it is well-established that phones are an instrumentality of interstate commerce. *Id*. But that is not correct. *Id*. at 312. Such a statement originated with *Weathers*, but that case devoted just a few paragraphs to this issue. *Id*. The cases *Weathers* relied on did not squarely address the constitutional issue, and instead involved statutory questions. *Id*. at 312-313.

> In short, our main decision holding that the Commerce Clause gives Congress the power to regulate all activities completed through a local phone call did not discuss the clause's original meaning. It also did not seek to reconcile its rule with the Supreme Court's most relevant precedent. It instead relied solely on circuit cases. And it may well have overread those cases.

*Id*. at 313. Judge Murphy concluded,

> The Founders established a federalist system to protect the liberty of the local communities in each State to choose the policies that would govern their

13

> local conduct. *See Bond v. United States*, 564 U.S. 211, 220–22, 131 S. Ct. 2355, 180 L.Ed.2d 269 (2011). This case demonstrates the point. The Michigan legislature and Congress both surely agree that Davis and Allen's murder has no place in our society. But what about the punishment? Many citizens have moral concerns with the death penalty. Michigan, for example, forbids this penalty in its constitution. Mich. Const. art. IV, § 46. But the federal murder-for-hire statute authorized a federal court to impose the death penalty for Davis and Allen's Michigan crime. 18 U.S.C. § 1958(a). And Davis and Allen spent years trying to convince federal prosecutors not to pursue that punishment. In the end, then, our broad view allowing Congress to regulate any activity done with a phone undercuts not just the Supreme Court's limits on its substantial-effects test but also the Michigan citizenry's right to govern themselves.

*Id*. at 313-314.

Both *Allen* and *Windham* were wrongly decided, for all the reasons Judge Murphy, joined by Judge Bush, laid out. As was the case here, there are many instances where an instrumentality of interstate commerce could be used to commit kidnapping, but without any nexus whatsoever with interstate commerce. Considered within the context of the exclusively intrastate activity regulated by the statute, then, the nature of the instrumentalities involved is not, by itself, sufficient to justify the regulation as an exercise of Congress's commerce power. There must be some minimum nexus with interstate commerce to justify any exercise of Congress's authority to regulate interstate commerce, and the mere classification of an object as an instrumentality of interstate commerce, at least in the context of intrastate kidnapping, is not sufficient. *See United States v. McHenry*, 97 F.3d 125, 133-34 (6th Cir. 1996) (Batchelder, J. dissenting) (expressing disagreement with the broad interpretation of the Commerce Clause that categorically treats cars (and phones) as instrumentality of interstate commerce, regardless of whether it was used as such).

14

### III. Kidnapping that occurs within the state does not substantially affect interstate commerce, therefore it does not fall under *Lopez*'s third category.

Under *Lopez*'s third category, Congress has the power to regulate local activities only if they have "a substantial relation to interstate commerce, ... i.e., those activities that may substantially affect interstate commerce." *Lopez*, 514 U.S. at 558-59. In *Allen*, the government conceded that the murder-for-hire statute does not fall under *Lopez's* third category. *Allen*, 86 F.4th at 301. While at one point the Supreme Court seemed to interpret the Commerce Clause broadly, allowing Congress to regulate *any* activity with substantial effect on interstate commerce, more recently the Supreme Court curtailed the "substantial effects" test and held that it applies only to *economic* activities. Because murder-for-hire is not an economic activity, the third *Lopez* category did not apply, a point that the government conceded. *Allen*, 86 F.4th at 301, 308.

The same applies to the kidnapping statute. The Supreme Court identified four relevant considerations under the "substantial affect" category: 1) whether the statute involves economic activity; 2) whether the statute contains an "express jurisdictional element which might limit its reach to a discrete set of [prohibited acts] that additionally have an explicit connection with or effect on interstate commerce"; 3) is there express congressional findings regarding the regulated activity's effects on interstate commerce; and (4) whether the link between the prohibited conduct and interstate commerce is direct or attenuated. *United States v. Morrison*, 529 U.S. 598, 610-12. (2000).

Under the first factor, the federal kidnapping statute does not involve commercial activity; instead, it involves non-economic, criminal conduct. Central to the Court's

15

decision in *Lopez* to invalidate The Gun-Free School Zone Act law, was "the noneconomic, criminal nature of the conduct at issue." *Lopez*, 514 U.S. at 551; *Morrison*, 529 U.S. at 610; *see also Gonzales v. Raich*, 545 U.S. 1, 25 (2005). The Supreme Court stressed that Act "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez*, 514 U.S. at 561. Similarly, in *Morrison*, the Supreme Court struck down the Violence Against Women Act because it lacked a substantial relationship to interstate commerce. *Morrison*, 529 U.S. 598 (2000). "Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity." *Morrison*, 529 U.S. at 613. Like in *Lopez* and *Morrison*, kidnapping does not have a commercial character. The Sixth Circuit recognized that "the kidnapping statute is meant to protect people, not an instrumentality of interstate commerce such as cars." *Windham*, 53 F.4th at 1012.

Under the second factor, although § 1201 includes a jurisdictional element (use of the mail, or facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense), its "reach" is not limited "to a discrete set of [prohibited acts] that additionally have an explicit connection with or effect on interstate commerce." *Lopez*, 514 U.S. at 562. Examples of such limitation can be found in the federal arson statute, which prohibits damaging "by means of fire or an explosive, any ... property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce*." *Jones v. United States*, 529 U.S. 848, 850 (2000) (emphasis added) (holding that the statute "covers only property currently used in commerce or in an activity affecting commerce" and thus cannot apply to the arson of an owner-occupied dwelling

16

used as a private residence). In contrast, the jurisdictional element in § 1201 contains no limitation that ties the prohibited activity to interstate commerce. To the contrary, the jurisdictional element enlarges the scope of regulated conduct as it purports to apply any time an automobile or phone is used, no matter how indirect and remote its effect on interstate commerce. The Supreme Court cautioned against such broad application of the Commerce Clause:

> But even these modern-era precedents which have expanded congressional power under the Commerce Clause confirm that this power is subject to outer limits. In *Jones & Laughlin Steel*, the Court warned that the scope of the interstate commerce power "must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government."

*Lopez*, 514 U.S. at 556-57 (quoting *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937). Moreover, courts must avoid stacking "inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Lopez*, 514 U.S. at 567.

Under the third factor, Congress made no express legislative findings regarding the effects of kidnappings upon interstate commerce. *Lopez*, 514 U.S. at 562; *United States v. Chavarria*, No. 22-CR-1724-KG, 2023 WL 3815203, at *5 (D.N.M. June 5, 2023).

The fourth *Lopez-Morrison* factor is also not present, as there is no link between kidnapping and interstate commerce. In *Lopez*, the Court rejected the government's argument that possession of a firearm in a school zone substantially affects interstate

17

commerce under the "cost of crime" and "national productivity" reasoning. *Lopez*, 514 U.S. at 564; *Morrison*, 529 U.S. at 612-13. The Court cautioned that under such reasoning there would be no limit on federal power. *Lopez*, 514 U.S. at 564. These justifications also fail here.

The Supreme Court stated that "thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." *Morrison*, 529 U.S. at 613. Same as the gender-motivated violence in *Morrison* or possession of a gun near a school in *Lopez*, kidnapping is not an economic activity, and has no connection with commerce between the states.

In sum, all four *Lopez-Morrison* considerations lead to the conclusion that the kidnapping that is alleged to have occurred here—solely within the state's borders—does not have a substantial effect on interstate commerce.

### IV. Mr. Trice did not use a cell phone in furtherance of the alleged offense.

Even if a cell phone is considered an "instrumentality of interstate commerce" there is no federal jurisdiction based on the use of a cell phone. To establish federal jurisdiction, 18 U.S.C. § 1201 requires that instrumentality of interstate commerce is used "in committing or in furtherance of the commission of the offense." That does not seem to be the case here. While it appears that Mr. Trice made a few phone calls and received a few messages from family members, it does not appear that these calls and messages were "in furtherance" of the offense. Therefore, the government cannot establish federal jurisdiction based on the use of phone, and the indictment should be dismissed.

## Conclusion

The primary responsibility for defining and enforcing criminal law lies with the states under their police power. The federal government may regulate and punish intrastate violence only if the regulation has been directed at the channels or instrumentalities of interstate commerce or if it has substantial effect on interstate commerce. Simply traveling on a road, using an automobile or a phone—entirely within the borders of a state—does not provide federal jurisdiction as it neither regulates interstate instrumentalities nor has a substantial effect on interstate commerce. If that was so, most crimes would be federal crimes, obliterating the distinction between what is national and what is local, thus encroaching on federalism and leading to a completely centralized government.

For all these reasons, 18 U.S.C. § 1201 is unconstitutional as applied to Mr. Trice. He respectfully requests that this Court dismiss the Indictment for lack of federal jurisdiction.

Respectfully submitted,

SHARON A. TUREK
Federal Public Defender

Dated: December 13, 2023

/s/ Sharon A. Turek
SHARON A. TUREK
Federal Public Defender
50 Louis NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420

/s/ Helen C. Nieuwenhuis
HELEN C. NIEWENHUIS
First Assistant Federal Public Defender

<u>/s/ Scott Graham</u>
SCOTT GRAHAM
Learned Counsel
1911 West Centre
Portage, MI 49024
(269) 327-0585

JASNA TOSIC
Research & Writing Specialist
