UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RASHAD MALEEK TRICE,

    Defendant.

                              /

No. 1:23-cr-95

Hon. ROBERT J. JONKER
U.S. District Judge

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Defendant kidnapped and killed the two-year-old victim, strangling her with a cell phone cord. Defendant moves this Court to dismiss the indictment, arguing that the kidnapping statute is unconstitutional under the Commerce Clause when Defendant's conduct was purely intrastate. The kidnapping statute, however, is a permissible regulation of "instrumentalities of interstate commerce . . . even though the threat may come only from intrastate activities." *United States v.* Lopez, 514 U.S. 549, 558 (1995). Defendant concedes that this is consistent with binding Sixth Circuit precedent. The motion should be denied.

**Statement of Facts**

On July 2, 2023, Defendant broke into his ex-girlfriend's apartment and assaulted her. She stabbed him in self-defense, then Defendant stabbed and sexually assaulted her. Defendant's ex-girlfriend fled the apartment, leaving behind her two minor children, including the two-year-old victim ("MV1").

Police responded to the residence around 11:19 pm but could not find MV1. Investigators searched MV1's mother's home, MV1's grandmother's home, and the surrounding area, but still did not find MV1.  An AMBER alert was issued.

On July 3, 2023, at 4:50 am, a police officer in St. Clair Shores saw Defendant driving a car that Defendant stole from his ex-girlfriend's mother in Lansing. (PageID.4.)  The officer attempted to stop Defendant, but Defendant fled and crashed with another patrol car.  (*Id.*)  Police arrested Defendant; MV1 was not present.  (*Id.*)

Police searched the stolen car and found pieces of a pink cell phone charging cord.  (PageID.5.)  Investigators obtained cell site location data, license plate reader data, and video surveillance footage, which indicated that Defendant traveled east via Interstates 496, 96, and 696.  (PageID.8-9.)  The location data led investigators to search an alley between Olympia Street and Edgewood Avenue in Detroit, where they found MV1's deceased body.  MV1 had been strangled with a pink cell phone cord, which matched the piece of cord police found in the stolen car Defendant was driving.

Investigators also found Defendant's cell phone in the stolen car and obtained a warrant to extract and review the contents.  At 12:49 am on July 3, Defendant used the internet browser on his phone to play a "Baby Shark" video repeatedly on YouTube.com.  This was MV1's favorite song and investigators believe Defendant used the video to pacify MV1 after kidnapping her.  Defendant also exchanged

messages, through his phone and social media, about the AMBER alert and the police search for him.

## Argument

The federal kidnapping statute, 18 U.S.C. § 1201(a)(1), is a valid exercise of Congress' power to regulate criminal conduct, both on its face and as applied to incidents of intrastate kidnapping where its jurisdictional criteria are met.

Title 18, United States Code, Section 1201(a)(1) provides that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof" when "the offender travels in interstate or foreign commerce or uses . . . any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense . . . shall be punished by imprisonment for any term of years or life."

I. The federal kidnapping statute, on its face, is a valid exercise of Congress's power under the Commerce Clause.

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). Statutes are presumed to be constitutional, which can only be overcome "upon a plain showing that Congress has exceeded its constitutional bounds." *Id.*

Congress enacted the federal kidnapping statute pursuant to its Commerce Clause power, which grants it authority to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. "[I]t is now well established that

Congress has broad authority under the Clause." *NFIB v. Sebelius*, 567 U.S. 519, 549 (2012) (opinion of Roberts, C.J.).

There are "three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). "First, Congress may regulate the use of the channels of interstate commerce." *Id*. "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id*. "Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *Id*. (internal citations omitted).

Congress enacted the first iteration of the federal kidnapping statute against the backdrop of organized crime and a growing epidemic of interstate kidnapping, including ransom demands. *Chatwin v. United States*, 326 U.S. 455, 463 (1946). Congress expanded the statute's scope in 2006 to reach kidnappings that were committed or furthered using any "means, facility, or instrumentality of interstate or foreign commerce[.]" 18 U.S.C. § 1201. This aspect of the statute is tailored to fit in the second category of Commerce Clause power, above. "[U]nlike the statute invalidated in *Lopez*, the kidnapping statute contains an express jurisdictional element that ensures that the statute only reaches kidnapping furthered by the instrumentalities of interstate commerce." *United States v. McKinley*, 647 F. App'x

4

957, 962-63 (11th Cir. 2016). "The federal kidnapping statute, therefore is not facially unconstitutional." *Id.*

The Tenth Circuit similarly held that the federal kidnapping statute falls into *Lopez*'s "second category, which includes regulation aimed at local, in-state activity involving instrumentalities of commerce." *United States v. Morgan*, 748 F.3d 1024, 1031 (10th Cir. 2014). "Nowhere in *Lopez* or any other case has the Supreme Court limited Congress's regulatory authority to prevent the harmful use of an instrumentality of interstate commerce." *Id.* at 1032. "Here we have a federal law that prohibits the use of an instrumentality to engage in kidnapping." *Id.*

Defendant identifies no contrary authority, and indeed concedes that the binding case law requires the denial of his motion, but argues that those cases were wrongly decided. Defendant hinges his facial challenge on his claim that "the text and legislative history make it clear that the statute's entire concern is with kidnapping, not commerce in any form," and that it "merely mentions the instrumentalities of interstate commerce as a means to securing federal jurisdiction over intrastate violence." (PageID.159-60.)  Even taking this claim as true, it does not change the analysis. What matters is whether the statute protects or regulates instrumentalities of interstate commerce, not what the lawmakers' intent was in enacting the statute. *See, e.g., Lopez*, 514 U.S. at 558-59; *McKinley*, 647 F. App'x at 962-63; *United States v. Windham*, 53 F.4th 1006, 1011-12 (6th Cir. 2022) ("[T]his Court has repeatedly found that Congress may regulate crimes that occur entirely intrastate if the offender uses an instrumentality of interstate commerce 'in

5

committing or in furtherance of the commission of the offense.'"); *United States v. Brika*, 487 F.3d 450, 455 (6th Cir. 2007) ("Both of the [kidnapping] statute's Commerce-Clause-based jurisdictional elements, *see United States v. Lopez,* 514 U.S. 549, 562–63 [ ] (1995), are also satisfied here, although only one is required.").

II.   <u>The kidnapping statute is constitutional as applied to the means of interstate commerce alleged in the indictment.</u>

The indictment alleges that "in committing and in furtherance of the [kidnapping, Defendant] used a means, facility, and instrumentality of interstate commerce, including, but not limited to, . . . Interstate Highways 496, 96 and 696; a cellular phone and communication network; and a foreign-made vehicle." (PageID.119.) The Sixth Circuit, and other courts, have found that each of these, even if used only intrastate, are a sufficient interstate nexus to satisfy the statute and the Commerce Clause.

   A.   *Cars*

Citing the Commerce Clause and the Supreme Court's decision in *Lopez*, the Sixth Circuit noted in *Windham* that it "has held repeatedly and unambiguously that cars . . . are instrumentalities of interstate commerce," even when they are used within one state. 53 F.4th 1006, 1013 (citing *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)). The Court also rejected the defendant's argument that Congress lacked authority to regulate kidnappings, like his, that occur entirely intrastate. *Id.* at 1011-12. "When a car . . . is used 'in committing or in furtherance of' a kidnapping for ransom, reward, or otherwise, the federal kidnapping statute applies"—and is constitutional. *Windham*, 53 F.4th at 1013. Likewise in *United*

6

*States v. McHenry*, 97 F.3d 125, 126 (6th Cir. 1996), the Sixth Circuit observed that "cars are themselves instrumentalities of commerce"—and held that the federal carjacking statute was a valid exercise of Congress's Commerce Clause power.

The Seventh Circuit reached the same conclusion about cars in *United States v. Protho*, 41 F.4th 812, 828-29 (7th Cir. 2022). Even though the car there was used interstate, the court emphasized that "it's the *nature* of the regulated object's class (here, automobiles) rather than the particular *use* of one member of that class ([defendant's] Ford Explorer) that matters." *Id.* (emphasis in original.) "[W]e do not agree with [defendant's] view that the Commerce Clause asks us to consider each automobile's specific use in interstate commerce." *Id.* at 828.

The Third Circuit also concluded, in a case involving the carjacking statute, "that motor vehicles are instrumentalities of interstate commerce. Thus, Congress may criminalize activities affecting their use even though the wrongful conduct, such as carjacking, occurs wholly intrastate." *United States v. Bishop*, 66 F.3d 569, 590 (3d Cir. 1995). Because the carjacking statute, "section 2119[,] is such a regulation[,] it is constitutional on that basis[.]" *Id.* The Third Circuit emphasized that *Lopez* does not call "for federal courts to supplant Congressional judgments with their own." *Bishop*, 66 F.3d at 590. The Supreme Court, in *Lopez*, counseled "'great restraint' before a court finds Congress to have overstepped its commerce power, and believed the Court's opinion to have been a 'necessary though limited holding.'" *Bishop*, 66 F.3d at 590.

7

B.   *Interstate highways*

Courts have uniformly found that interstate highways are instrumentalities of interstate commerce, subject to regulation under the Commerce Clause, as well.

In *United States v. Messer*, 71 F.4th 452 (6th Cir. 2023), the Sixth Circuit applied its reasoning from *Windham* to the use of an interstate highway within one state as an instrumentality of interstate commerce. There, the defendants "traveled north on Interstate 75 and then northeast on Kentucky Highway 80 until they reached the trailer of [the victim's] grandmother. At no time did the cars or their occupants leave Kentucky." *Id*. at 455. These highways were two of the charged instrumentalities of interstate commerce. *Id*. The Court affirmed the convictions and dismissed the defendants' challenge to Congress' ability to "regulate activity that (1) uses, on an intrastate basis, instrumentalities of interstate commerce, and (2) is not directed at those instrumentalities[,]" citing its prior ruling in *Windham*. *Id*. at 457.

Similarly, in *United States v. Jenkins*, 909 F. Supp. 2d 758 (E.D. Ky. 2012), the district court considered the sufficiency of the evidence to support federal jurisdiction in a case charging kidnapping and a federal hate crime. *Id*. at 764. Jurisdiction was based, in part, on traveling on U.S. Highway 119. *Id*. The district court held that when the defendants traveled to the location of the assault along U.S. Highway 119, "they did so via a channel of interstate commerce." *Id*. at 771. The court likewise held that use of the pickup truck also afforded federal jurisdiction. *Jenkins*, 909 F. Supp. 2d at 771.

8

In *United States v. McPherson*, 587 F. App'x 556, 563 (11th Cir. 2014), the defendant was charged with producing child pornography. The interstate nexus element was, in part, satisfied because the defendant "traveled with the DVDs from his home in Daphne, Alabama, to his daughter's house in Birmingham, Alabama, where the filming occurred, and back again." *Id.* at 563. "His intrastate travel necessarily involved the use of roads and highways, which are channels of interstate commerce." *Id.* "[T]here was sufficient evidence in the record to satisfy the jurisdictional component of the crime as charged beyond a reasonable doubt[.]" *Id.*

The Supreme Court has also held that "a wholly intrastate bridge that connected an island to a road that then connected to an interstate highway was an instrumentality of interstate commerce despite the fact that goods, when they traveled over the bridge, necessarily traveled in intrastate commerce." *United States v. Bishop*, 66 F.3d 569, 589 (3d Cir. 1995) (citing *Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943)).

C.   *Cell phones*

"Congress's authority to legislate is plenary when, as here, the government's evidence establishes that [a] defendant[ ] used cellular telephones in the commission of a kidnapping." *United States v. Dais*, 559 F. App'x 438, 445 (6th Cir. 2014). Sixth Circuit "caselaw unequivocally holds that 'cellular telephones, even in the absence of evidence that they were used to make interstate calls, have been held to be instrumentalities of interstate commerce.'" *Dais*, 559 F. App'x at 445 (quoting

9

*United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)); *see also Windham*, 53 F.4th at 1013 ("When a car or a cell phone is used 'in committing or in furtherance of' a kidnapping for ransom, reward, or otherwise, the federal kidnapping statute applies.").

The Second Circuit has also held that "even an intrastate telephone call constitutes the use of a facility of interstate commerce, in connection with the statute criminalizing murder-for-hire, 18 U.S.C. § 1958, which uses the same term as the kidnapping statute." *United States v. Ramos*, 622 F. App'x 29, 30 (2d Cir. 2015). Other Circuits that have considered the issue have similarly concluded that cell phones are facilities of interstate commerce. *See United States v. Taplet*, 776 F.3d 875, 882 (D.C. Cir. 2015); *United States v. Evans*, 476 F.3d 1176, 1180–81 (11th Cir. 2007).

III.   <u>The kidnapping statute is not subject to "substantial effects" analysis under *Lopez*.</u>

As Defendant points out, in a recent Sixth Circuit opinion, *United States v. Allen*, Judge Murphy wrote a concurring opinion expressing that he was "skeptical" of Sixth Circuit precedent holding that Congress may regulate otherwise intrastate activity under the Commerce Clause if such activity merely uses an instrumentality of interstate commerce. 86 F.4th 295, 308 (6th Cir. 2023) (Murphy, J. concurring). As a concurrence, this view is not binding, and Judge Murphy recognized that Circuit precedent forecloses his argument. *Id.* at 311. The argument also goes against the great weight of precedent from other circuits, as discussed above. Moreover, the concurrence addresses only telephones and cars as instrumentalities

10

of interstate commerce; it does not address Congress's ability to regulate the use of plainly interstate highway systems, as occurred in this case.

Regardless, as to all three instrumentalities (cars, phones, and highways), Congress—as the regulator of interstate commerce—must have the authority to prohibit illicit uses of these channels and instrumentalities. These channels and instrumentalities are "the ingredients of interstate commerce itself," making Congress's ability to regulate them "self-evident." *Gonzales v. Raich*, 545 U.S. 1, 34 (2005) (Scalia, J., concurring). Indeed, as the Supreme Court recognized in *Lopez*, Congress may regulate and protect these instrumentalities even from threats coming from only intrastate activities. *Lopez*, 514 U.S. at 558. That is what Congress has done with the kidnapping statute.

The case law in this circuit, other circuits, and the Supreme Court is clear and uniform – cell phones, cars, and interstate highways are instrumentalities of interstate commerce subject to regulation under the Commerce Clause.

IV.    <u>Defendant's challenge to the facts of this case is premature and not permitted under Rule 12.</u>

Finally, Defendant argues that the particular ways in which he used these instrumentalities do not satisfy the elements of 18 U.S.C. § 1201(a)(1). While the United States plans to introduce substantial and compelling evidence to the contrary, it is also immaterial to the current motion. Once indicted, there is no mechanism by which Defendant can move for dismissal of charges based on alleged factual shortcomings. Factual disputes are decided by a jury.

Federal Rule of Criminal Procedure 12(b)(1) permits pretrial motions raising "any defense objections or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Generally, motions are capable of determination before trial if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). "[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001).

A motion to dismiss is generally limited to reviewing the four corners of the indictment. *See United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012) (citing cases). "If an indictment is valid on its face, it may not be dismissed on the ground that it is based on inadequate or insufficient evidence." *United States v. Walters*, No. 3:15-CR-14-GFVT-REW, 2016 WL 1453069, at *3 (E.D. Ky. Apr. 12, 2016) (citing Fed. R. Crim. P. 12(b)(2) n.2). Allegations in an indictment are assumed to be true and are viewed in the light most favorable to the government. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952). "[A]n indictment is sufficient if

it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Coss*, 677 F.3d 278, 287 (6th Cir. 2012) (quoting *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010)). The indictment need only include "the essential facts constituting the offense charged" and need not refer to all facts and evidence supporting the charge. Fed. R. Crim. P. 7(c). An indictment cannot be challenged on the basis of insufficient or incompetent evidence presented in the grand jury. *Costello v. United States*, 350 U.S. 359, 363 (1956).

"[I]f a defendant's pretrial motion requires the court to find facts that make up the elements of the case which would normally be reserved to the jury on trial of the general issue, the motion should be denied." *United States v. Cumberland Wood and Chair Corp.*, Nos. 91-6058-6060, 1992 WL 317175, at *3 (6th Cir. Oct. 27, 1992); *see also United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987). A motion to dismiss must not seek to pre-try a case and it is not a device for a summary trial of the evidence. Accordingly, "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011) (collecting cases).

The indictment charges the necessary elements of kidnapping resulting in death and kidnapping of a minor, in violation of 18 U.S.C. §§ 1201(a)(1) and (g)(1), respectively. Defendant does not allege that there is anything lacking in the

13

charging language. The proper mechanism to resolve this portion of Defendant's claim is a trial, not a pretrial motion for dismissal.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court deny Defendant's motion to dismiss.

                                 Respectfully submitted,

                                 MARK A. TOTTEN
                               United States Attorney

Dated: January 9, 2024            */s/ Jonathan Roth*
                               DOAA AL-HOWAISHY
                               JONATHAN ROTH
                               Assistant United States Attorneys
                               United States Attorney's Office
                               P.O. Box 208
                               Grand Rapids, MI 49501-0208
                               (616) 456-2404